## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| **Acadia Insurance Company,** : | |
| **Plaintiff,** : | |
| : | |
| v. : | Case No. 3:05cv1463 (JBA) |
| : | |
| **American Crushing & Recycling, LLC,** : | |
| **et al.,** : | |
| **Defendants.** : | |

**RULING ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT [DOC. # 108]**

Plaintiff Acadia Insurance Company ("Acadia") brought this interpleader action against its insured American Crushing & Recycling, LLC ("ACR") and numerous other potential claimants seeking an order permitting interpleader of the proceeds of insurance policies issued by Acadia to ACR, an injunction pursuant to 28 U.S.C. §§ 1335(a) and 2361 restraining defendants from instituting or prosecuting any proceeding affecting the proceeds, and a declaratory judgment that Acadia is not obligated under its policies of liability insurance issued to ACR to defend and/or indemnify ACR in connection with a July 29, 2005 motor vehicle accident in Avon, Connecticut (the "Accident") involving a 2000 Mack Tri-Axle Dump Truck with Vehicle Identification Number 1M2P267C6YM053636 (the "Vehicle") that ACR owed at the time of the Accident. See Compl. [Doc. # 1].

Acadia now moves for summary judgment [Doc. # 108] on Counts 2 and 3 of the Complaint, seeking a declaration of the absence of an indemnity obligation and the absence of a duty to defend,

1

respectively, contending there is no genuine issue of material fact for trial that in January 2005, ACR suspended liability coverage under its automobile insurance policy (the "Auto Policy") for the Vehicle, that it did not reinstate liability coverage for the Vehicle prior to the July 29, 2005 accident, and that because ACR suspended the Auto Policy's liability coverage, there also is no indemnity or defense coverage under the umbrella insurance policy (the "Umbrella Policy") by virtue of the terms of that policy's Endorsement. Two defendants and potential claimants, defendant Ellen Stotler and defendant Theodore Connole, oppose plaintiff's Motion. For the reasons that follow, Acadia's Motion for Summary Judgment will be granted.

**I. Factual Background**

Acadia issued the Auto Policy to ACR for the period September 1, 2004 to September 1, 2005, and a copy of that policy, which defendants contend remained in effect on the date of the Accident, appears at Exhibit A.1 to Acadia's Local Rule 56(a)1 Statement [Doc. # 110]. Acadia also issued the Umbrella Policy to ACR for the same policy period of September 1, 2004 to September 1, 2005, a copy of which appears at Exhibit A.2 to Acadia's Local Rule 56(a)1 Statement.

On January 3, 2005, Noel Jonovic of Webster Insurance received a request from ACR to suspend liability coverage under its Auto Policy for 12 of its dump trucks, see Jonovic Dep. [Doc.

# 110, Ex. B] at 7-8, and in response Ms. Jonovic sent ACR representative Donna Wilcox a letter [Doc. # 110, Ex B.1] stating: "This is to confirm our conversation today. Effective 1/4/05, the following dump trucks will be suspended for coverage. By suspending coverage, these vehicles will have **Comprehensive Coverage only**: 2000 Mack Tri-Axle Vin ... #3636 . . . Please sign below to acknowledge that you wish for these vehicles to have coverage suspended" (emphasis in original). Donna Wilcox signed and dated the letter and returned it to Jonovic. Id.; Jonovic Dep. at 11-12. Jonovic then prepared a commercial policy change request form in order to process ACR's suspension request and submitted the form to Acadia. Jonovic Dep. at 13-15; Policy Change Request Form [Doc. # 110, Ex. B.2].

Subsequently, on the morning of July 29, 2005, the Accident occurred in Avon, Connecticut. Defendants agree that at no time between January 3, 2005 and the time of the Accident did ACR request reinstatement of any suspended coverages, although they dispute whether the coverage was actually suspended. At 9:31 a.m. on July 29, after the Accident had taken place, Webster Insurance made a request to Acadia to reinstate coverage for the Vehicle and the other tri-axle dump trucks whose coverage had been suspended in January 2005, requesting that reinstatement be retroactively effective July 1, 2005. Acadia informed Webster Insurance that it could not reinstate coverage retroactively and

3

later that same morning Acadia received a revised reinstatement request from Webster Insurance requesting that the suspended coverages be reinstated effective July 29, 2005.  Neither of the requests mentioned the early-morning Accident, and coverage was not reinstated.

Turning to the text of the insurance policies at issue, the Auto Policy provides with respect to liability coverage indemnification and duty to defend coverage for "bodily injury" or "property damage" "to which this insurance applies caused by an accident and resulting from the ownership, maintenance or use of a covered 'auto.'" Auto Policy, Form CA 00011001, page 2.  On the Business Auto Coverage Form Declarations page of the Auto Policy, the Vehicle is listed under "Item Three.  Schedule of Covered Autos You Own" and the page also lists a premium paid for the Vehicle for liability, or "CSL," coverage.  Id., Form AI CD 711001, page 3.  The Declarations page also lists the categories "covered autos" accorded different types of coverage (e.g. liability, auto medical payments), and indicates that "covered autos" falling within "symbol 1" have liability coverage.  Id., Form AI CD 711001, page 1.  The Business Auto Coverage Form defines "symbol 1" as "any auto."  Id., Form CA 00011001, page 1.  However, a Suspension of Insurance effective January 4, 2005 lists "Coverages and 'Autos' Suspended" and includes reference to the Vehicle, with a X notation in the column for "liability,"

4

which Acadia contends confirms the suspension of liability coverage as well as other coverages for the Vehicle. Id., Form CA 02401001, pages 1, 3. Further, on January 4, 2005, Acadia issued ACR a refund credit premium in the amount of $39,976.00 [Doc. # 110, Ex. A.6]. An Amendatory Endorsement effective July 23, 2005, issued to document changes in coverage with respect to other of ACR's vehicles, includes a revised Business Auto coverage Form Declarations page and reflects liability coverage for vehicles under "symbols" 7, 8, and 9, only. Id., Form AI CD 711001 attached to AI CD 430692, page 1. Symbol 7, the only symbol of the three potentially applicable to the Vehicle in this case, is defined as "those 'autos' described in Item Three of the Declarations for which a premium charge is shown." Id., Form 00011001, page 1. The Declarations page attached to the July 23, 2005 Endorsement lists a premium payment for the Vehicle for Comprehensive ("COMP") coverage only, not liability ("CSL"). Id., Form AI CD 711001 attached to AI CD 430692, page 3.

The Umbrella Policy contains an "Automobile Liability - Following Form," which states "Except to the extent that coverage is provided in the 'underlying insurance' for the full limit shown . . . this insurance does not apply to 'bodily injury' or 'property damage' arising out of the ownership, maintenance, operation, use, entrustment to others, or 'loading or unloading' of any 'auto' owned, operated by, rented or loaned to any

5

'insured.'" Umbrella Policy, Form AI CU 230302. The Umbrella Policy's Schedule of Underlying Insurance includes reference to the Auto Policy. Id., Form AI CD 030302.

The Auto Policy provides a coverage limit of $1,000,000 and the Umbrella Policy has a coverage limit of $2,000,000.

## II. Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A party seeking summary judgment "bears the burden of establishing that no genuine issue of material fact exists and that the undisputed facts establish [its] right to judgment as a matter of law." Rodriguez v. City of N.Y., 72 F.3d 1051, 1060 (2d Cir. 1995) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970)). "The duty of the court is to determine whether there are issues to be tried; in making that determination, the court is to draw all factual inferences in favor of the party against whom summary judgment is sought, viewing the factual assertions in materials such as affidavits, exhibits, and depositions in the light most favorable to the party opposing the motion." Id. (citations omitted). "If reasonable minds could differ as to the import of the evidence . . . and if there is any

6

evidence in the record from any source from which a reasonable inference in the nonmoving party's favor may be drawn, the moving party simply cannot obtain a summary judgment." R.B. Ventures, Ltd. v. Shane, 112 F.3d 54, 59 (2d Cir. 1997) (internal quotation, citation, and alteration omitted).  However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (internal quotation and citation omitted).

**III. Discussion**

<u>Auto Policy Coverage</u>

With respect to the Auto Policy, defendants Stotler and Connole raise the following issues: (1) Stotler argues that the Auto Policy provides liability coverage for all of ACR's vehicles designated with a "symbol 1," and that "symbol 1" vehicles are defined as "all autos;" (2) Connole references the July 23, 2005 endorsement, notes that the Vehicle is listed under "Item Three," and contends it is thus covered for liability under the Auto Policy; and (3) Connole's brief also disputes whether ACR actually and properly requested suspension of liability coverage for the Vehicle.

"Th[e] law regarding construction of insurance contracts is well-settled in Connecticut:

> An insurance policy is to be interpreted by the same
> general rules that govern the construction of any
> written contract and enforced in accordance with the
> real intent of the parties as expressed in the language
> employed in the policy. The policy words must be
> accorded their natural and ordinary meaning. Under
> well established rules of construction, any ambiguity
> in the terms of an insurance policy must be construed
> in favor of the insured because the insurance company
> drafted the policy. This rule of construction may not
> be applied, however, unless the policy terms are indeed
> ambiguous. Moreover, the mere fact that the parties
> advance different interpretations of the language in
> question does not necessitate a conclusion that the
> language is ambiguous. Construction of a contract of
> insurance presents a question of law for the court.

Ohio Cas. Ins. Co. v. Dentek, Inc., 283 F. Supp. 2d 655, 659 (D. Conn. 2003) (quoting Hansen v. Ohio Cas. Ins. Co., 687 A.2d 1262, 1264-65 (Conn. 1996)).

Bearing these principles in mind and first considering defendant Stotler's contention, Stotler's reliance on the definition of "symbol 1" as "all autos" reflecting those vehicles carrying liability coverage under the Auto Policy at the time of the Accident is misplaced. While the original policy indicated that "covered autos" falling within "symbol 1," defined as "any auto," had liability coverage, as detailed above the July 23, 2005 Endorsement clearly reflects suspension of liability coverage over the Vehicle, as documented in the Suspension of Insurance effective January 4, 2005. See Mount Vernon Fire Ins. Co. v. Morris, 877 A.2d 910, 921 (Conn. App. Ct. 2005) ("[I]t is in the very nature of an endorsement that it alters and takes precedence over the provisions of the policy to which it

pertains. . . . If any irreconcilable conflict exists between provisions of the policy and provisions of an endorsement, then the latter must control.") (citing, inter alia, Schultz v. Hartford Fire Ins. Co., 569 A.2d 1131, 1135-36 (Conn. 1990)).

Next, Connole points to the fact that in the July 23 Endorsement the Vehicle is listed in "Item Three." However, as described above, the July 23 Endorsement reflects liability coverage for vehicles falling under "symbols" 7, 8, and 9 only, and "symbol 7," the only symbol of the three potentially applicable to the Vehicle, is defined as "those 'autos' described in Item Three of the Declarations <u>for which a premium charge is shown</u>." Auto Policy, Form 00011001, page 1 (emphasis added). Thus, while the Vehicle is listed in Item Three, because the Declarations Page lists a premium payment for the Vehicle for Comprehensive ("COMP") coverage only, the July 23 Endorsement does not establish any liability coverage for the Vehicle as of July 29, 2005.[1]

Next, Connole disputes the validity of the purported request by ACR for suspension of liability coverage, contending that

---

[1] Additionally, while the fact that the parties advance differing interpretations of the Auto Policy does not indicate that the Policy is ambiguous, see Hansen, 687 A.2d at 1265, the Court observes that the evidence in the record of the parties' intentions, including the correspondence regarding the suspension in January 2005, the premium refund, and the undisputed requests on July 29, 2005 for reinstatement of coverage, are consistent with the Court's interpretation of the Policy.

neither Acadia nor Webster Insurance received requests for suspension of coverage from ACR as the first named insured, as required by the Auto Policy.  However, Connole points to no specific policy rules regarding the format of suspension requests, and Acadia contends that there are none.  Moreover, the record contains evidence that ACR did in fact intend to suspend liability coverage of the Vehicle as of January 4, 2005, in the form of the signed letter by Donna Wilcox of ACR confirming the suspension [Doc. # 110, Ex. B.1], the Suspension of Insurance document (about which there is no evidence that ACR ever disputed or objected), and the premium refund to ACR in consideration of the suspension of liability coverage for certain vehicles.  There is no evidence in the record to dispute the correspondence between Janovic and Wilcox or Janovic's deposition testimony, both of which indicate that Wilcox, for ACR, requested the suspension.  Connole's bald assertions that Ms. Wilcox did not have the authority to request the documented suspension of liability coverage, and his unsubstantiated claim that the suspension was not accomplished in compliance with the terms of the Auto Policy, absent any supporting evidence, are insufficient to defeat summary judgment.  See, e.g., Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (no genuine issue of material fact created "merely by the presentation of assertions that are conclusory").

### Umbrella Policy Coverage

As noted above, the Umbrella Policy contains a "Following Form," stating "Except to the except that coverage is provided in the 'underlying insurance' for the full limit shown . . . this insurance does not apply to 'bodily injury' or 'property damage' arising out of the ownership, maintenance, operation, use, entrustment to others, or 'loading or unloading' of any 'auto' owned, operated by, rented or loaned to any 'insured.'" Umbrella Policy, Form AI CU 230302. "'Following form' coverage is insurance that follows the same terms and conditions as the underlying or primary policy." See Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. L.E. Myers Co. Group, No. 84 Civ. 7481 (SWK), 1995 WL 581692, at *13 (S.D.N.Y. Oct. 4, 1995). Following form coverage is construed "as including the same terms, conditions and scope of coverage as exist in the original policy." 1A Couch on Ins. § 9:13 (3d ed. 2006) (also stating, with respect to reinsurance coverage, "if a reinsurance contract contains a follow form clause, concurrency between the reinsurance agreement and the original insurance policy is presumed") (citing, inter alia, Aetna Cas. & Sur. Co. v. Home Ins. Co., 882 F. Supp. 1328 (S.D.N.Y. 1995)).

Here, the Umbrella Policy contains a following form and lists the Auto Policy in its Schedule of Underlying Insurance. Thus, pursuant to these well-settled principles of insurance

11

coverage following forms, the scope of the Umbrella Policy is commensurate with that of its underlying insurance.  While Connole contends there is a genuine issue of material fact as to whether the following form supports an accident-specific or vehicle-specific analysis of the underlying coverage and whether the Umbrella Policy could be in effect even though ACR failed to maintain primary coverage on the Vehicle, he cites no case law and adduces no evidence to support any interpretation other than that based on the ordinary meaning of the Umbrella Policy's following form that the Policy "follows" the terms and conditions of the underlying Auto Policy, including the Auto Policy's lack of liability coverage of the Vehicle.  In the absence of any such authority or evidence, the terms of the Umbrella Policy, including its following form, will thus be given this ordinary meaning.

**IV.  Conclusion**

For the foregoing reasons, plaintiff Acadia's Motion for Summary Judgment [Doc. # 108] is GRANTED.  It is hereby ORDERED and ADJUDGED that Acadia is not obligated to defend or indemnify ACR under either the Auto Policy or the Umbrella Policy for claims arising, or to arise, out of the July 29, 2005 Accident, and that Acadia may thus retain the interpleader stake of $3,000,000 (the combined policy coverage amounts of the two policies).

The Clerk is directed to CLOSE this case.[2]

IT IS SO ORDERED.

/s/
Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 28th day of February, 2007.**

---

[2] Although there is a "Count 1," that Count is titled "Facts Giving Rise to Interpleader Action" and seeks an Order "restraining all claimants from instituting or pursuing any proceeding in any State or Federal Court affecting the insurance proceeds, instrument, or insurance obligation involved in the interpleader action until further order of the Court" (Compl. ¶ 52). Having issued decision on Counts 2 and 3, Count 1 is mooted.